DA 09-0646

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 190N

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

DAVID RICHARD MAPLES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 08-198A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Attorney at Law, Great Falls, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney; Kyla Murray and Scott Lanzon,
Deputy County Attorneys, Bozeman, Montana

Submitted on Briefs: July 14, 2010
Decided: August 25, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Appellant David Richard Maples (Maples) appeals from the District Court's order denying his motion to dismiss the charge of failing to register as a violent offender. We affirm.

¶3     The State charged Maples with failing to register as a violent offender in violation of §§ 46-23-504 and 46-23-507, MCA. Maples had been convicted in Florida of the felony offenses of murder in the second degree and conspiracy to commit murder in the second degree on November 24, 1993. Maples alleges that he discharged his Florida sentences on September 29, 1999. Maples then relocated to Montana.

¶4     Maples sought a license to be a card dealer in 2008. An agent with the Gambling Investigation Bureau assigned to review Maples's application for a dealer's license discovered that Maples had felony convictions in Florida. The agent notified the Bozeman Police Department of these discoveries. Detective Charlie Gappmayer contacted Maples by telephone on March 10, 2008, and advised Maples that he needed to register as a violent offender. Detective Gappmayer verified that as of June 11, 2008, Maples had not registered as a violent offender. The State charged Maples on July 22, 2008.

2

¶5      Maples filed a motion to dismiss the charge on May 1, 2009. He alleged that the registration statute is unconstitutionally vague as applied to him. His "void for vagueness" argument revolved around the enactment of, and various amendments to, the registration statute. He contends that the statute failed to give him sufficient notice that the statute applied retroactively to his offenses. The District Court denied Maples's motion, in part, on the grounds that Maples had actual notice that he was required to register based upon Detective Gappmayer's phone call to Maples informing him that he needed to register. Maples entered a plea of guilty to failure to register as a violent offender on August 11, 2009. He reserved his right to appeal the denial of the District Court's motion to dismiss. Maples appeals.

¶6      We review de novo a district court's denial of a motion to dismiss. *State v. G'Stohl*, 2010 MT 7, ¶ 7, 355 Mont. 43, 223 P.3d 926. We have determined to decide this case pursuant to Section 1, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. It is manifest on the face of the briefs and the record before us that the District Court properly concluded that Maples had actual notice of his requirement to register based upon the telephone call by Detective Gappmayer. The District Court correctly denied his motion to dismiss.

¶7      Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson, specially concurring.

¶8 I concur in the result of the Court's Opinion. Arguably if, as here, the defendant is told by a peace officer of the registration requirement, then he or she is, at a minimum, on inquiry notice (if not actual notice) of the requirement. Maples has not challenged this aspect of the case.

¶9 That said, however, I tend to agree with Maples' vagueness argument. Since we are not setting precedent in this case, there is no need to develop a thoroughly analyzed argument. But, basically, as noted in ¶¶ 3 and 4 of the Opinion, what happened here was that in November 1993, Maples was convicted in Florida of murder in the second degree and conspiracy to commit murder in the second degree. He discharged his sentences in September 1999 and eventually relocated to Big Sky, Montana. Maples applied for a car dealer's license; and, as part of the background investigation, it was discovered that he had been convicted of offenses in Florida that would require him to register as a violent offender in Montana under the Sexual or Violent Offender Registration Act (SVORA), Title 46, chapter 23, part 5, MCA. Though told by a Bozeman police detective that he needed to register, Maples refused. Accordingly, he was charged with failure to register as a violent offender, in violation of §§ 46-23-504 and -507, MCA. Maples then raised an as-applied

4

vagueness challenge and moved to dismiss. His motion was denied. He pleaded guilty, reserving his right to appeal the denial of his motion.

¶10 Maples and the State agree on the law with regard to as-applied challenges based on vagueness, and I am not going to review that law here. Both parties also agree on the genesis of SVORA. This law was enacted in 1989 and applied only to sexual offenders. *See* Laws of Montana, 1989, ch. 293, § 5. In 1995, it was amended to require violent offenders to register. *See* Laws of Montana, 1995, ch. 407, § 7. The 1995 definition of a "violent offense" requiring registration includes an offense committed in another state that is reasonably equivalent to deliberate homicide or mitigated deliberate homicide under Montana law. *See* § 46-23-502(4), MCA (1995), *now codified at* § 46-23-502(13), MCA (2009). In *State v. Whitmer*, 285 Mont. 100, 103, 946 P.2d 137, 139 (1997), we ruled that the 1995 amendments did not apply retroactively. In 1997, however, SVORA was amended in various respects, including a provision that made SVORA apply retroactively to violent offenders who were sentenced or who were in the custody of or under the supervision of the Department of Corrections (DOC) on or after October 1, 1995. *See* Laws of Montana, 1997, ch. 375, § 18. Then, in 2001, the retroactivity provision contained in the 1997 amendments was itself amended, making the provisions of SVORA apply retroactively to violent offenders who were sentenced by a state or federal court in any state on or after October 1, 1995, or who as a result of a sentence were under the supervision of a county, state, or federal agency in any state on or after October 1, 1995. *See* Laws of Montana, 2001, ch. 152, § 1 (amending Section 18, Chapter 375, Laws of 1997).

5

¶11 Because Maples did not discharge his sentence until 1999, SVORA (as amended in 2001) would have applied retroactively to him. In 2005, the Legislature again amended SVORA, this time to make it easier to administer. *See* Laws of Montana, 2005, ch. 313; *State v. Hamilton*, 2007 MT 167, ¶ 15, 338 Mont. 142, 164 P.3d 884. Those amendments, which expanded the definition of sexual offender, did not affect Maples' duty to register. Although the 2005 amendments did not contain a retroactivity clause, this Court held in *Hamilton* that the Legislature intended the 2005 amendments to apply retroactively. *See Hamilton*, ¶ 16.[1] The Court noted that the 2001 Legislature had explicitly stated that the provisions of SVORA applied retroactively, *Hamilton*, ¶ 12, and the Court concluded that the Legislature intended the 2005 amendments to apply retroactively as well, *Hamilton*, ¶ 15. In 2007, SVORA was amended yet again. *See* Laws of Montana, 2007, ch. 483, §§ 19-24. The retroactivity provision contained language similar to the 1997 amendment, making the 2007 amendments apply retroactively to violent offenders who were sentenced or who were in the custody or under the supervision of DOC on or after October 1, 1995. *See id.*, § 31.

¶12 Maples acknowledges that he qualifies as a violent offender and that the 2001 amendment made SVORA apply retroactively to violent offenders who served their sentence in another state. Maples argues, however, that the SVORA statutes are vague as applied to him because the 2001 legislative amendment regarding the retroactive applicability of SVORA is not expressly reflected anywhere in Title 46, chapter 23, part 5, MCA. He maintains that in the absence of such an express statement, the registration statutes are

---

[1] There was no constitutional vagueness challenge raised in *Hamilton*.

insufficient to put him on notice that they apply retroactively to his offense. The text of the various statutes contained in the 2007 version of SVORA make no mention of retroactive applicability, and the legislative history pertaining to each of the individual statutes within SVORA do not reference the 2001 amendment regarding retroactive applicability. Therefore, Maples argues, SVORA is impermissibly vague as applied to him. Maples further contends that the 2007 Legislature's inclusion of a statement of retroactivity leads to more confusion given our reasoning in ¶ 15 of *Hamilton* and because the language used is nothing like the broad language of the 2001 retroactivity amendment. He observes— correctly, in my view—that if the Legislature includes a statement of retroactivity with every new amendment, but then amends the language of those retroactivity statements from session to session, then one would have to research every amendment to SVORA since 1995 to determine which amendments apply to which citizen. As such, no ordinary citizen could understand what conduct—i.e., failure to register—is prohibited and under what circumstances.

¶13 The State makes two arguments. First, it argues that Maples was put on notice of the 2001 retroactivity amendment by reason of the retroactivity provision's being included in the Montana Session Laws. Second, the State argues that he was put on notice of the 2001 retroactivity amendment by *Hamilton*. Both arguments are lame.

¶14 As Maples argues, a person of ordinary intelligence does not have ready access to legislative history or to the Session Laws, let alone the legal or analytical skills to decipher or interpret the Legislature's intent in crafting the law. Likewise, it makes no sense to argue

7

that *Hamilton* put him on notice. Simply because this Court interprets a statute in a particular manner, it does not follow that a person of ordinary intelligence is going to have access to our opinions and the ability to analyze and apply our holdings.

¶15 In these arguments, I concur with Maples completely. I cannot agree that a person of ordinary intelligence can be put on notice by what is contained in, or by the Legislature's presumed intent expressed in, the Session Laws. Our presumption that ordinary citizens know the law is a fiction. Even for those who have access to the Session Laws or the Montana Code Annotated, none—and certainly not a person of ordinary intelligence—can possibly "know" the thousands of pages of statutory law and hundreds of thousands of pages of caselaw without being told of its existence or being able to research and interpret it. And few people of ordinary intelligence have the knowledge or skill of trained lawyers in legal research. Statutes are required to be drafted so as not to be vague. The government cannot foist onto ordinary people the responsibility to know the law when it takes, as here, lawyers and judges to figure out what the law is. The tortured legislative history of SVORA confuses attorneys. How, then, is a person of ordinary intelligence supposed to understand it? No person of ordinary intelligence could hope to figure out whether this or that particular version of SVORA is or is not applicable to a given defendant with a given criminal conviction history. Indeed, it is obvious that, for the most part, the Legislature is never sure.

¶16 But for the fact that Maples had notice of his obligation to register, I would hold that the statute is vague as applied to him. On that basis only, I specially concur.

/S/ JAMES C. NELSON